In re Clarence W. **ADAMS,** Debtor.

Margaret Ruth **CRAYCRAFT,** Plaintiff,

v.

Clarence W. **ADAMS,** Defendant.

**Bankruptcy No. 581–1029.**
**Adv. No. 581–0622.**

United States Bankruptcy Court,
N. D. Ohio.

June 29, 1982.

John Snoderly, Akron, Ohio, for plaintiff.

Edwin C. Pierce, Akron, Ohio, for defendant-debtor.

H. F. WHITE, Bankruptcy Judge.

Based upon the evidence and testimony presented at the trial held on the 28th day of October, 1981, the Court hereby makes the following Finding of Fact.

### FINDING OF FACT

1) On the 11th day of October, 1978, the debtor, Clarence W. Adams, and one Jerry N. Craycraft were involved in a pool game against each other at Flo's Lounge, a bar located on South Main Street in Akron.

2) The debtor and Jerry Craycraft had a Four Dollar ($4.00) bet between themselves on the outcome of said pool game. Mr. Craycraft was the victor over debtor.

3) Both men were drinking at the time, but neither was "drunk"—rather, both men were "feeling good".

4) Mr. Craycraft then indicated to debtor that since debtor had lost the pool game, he

should give him Four Dollars ($4.00), the amount of the bet; whereupon debtor replied that he did not have that much money on his person. Mr. Craycraft then called debtor a few various and sundry names.

5) After a brief respite, Craycraft approached debtor who had seated himself at the bar and struck him with enough force to knock him to the floor then threatening him verbally with greater physical harm. Other patrons of the bar then restrained Craycraft when he attempted to strike debtor with a chair.

6) Debtor responded by telling Craycraft he would go and get the money and return with it shortly; whereupon debtor proceeded to his nearby place of business, a barber shop, and got the money and also tucked a revolver in his belt which he kept at his shop for his protection. Debtor took the gun because he was afraid that Craycraft would attempt to inflict him with more physical abuse.

7) Debtor then returned to the bar and approached Craycraft who was seated at the bar. As debtor was walking toward Craycraft, the revolver fell from his belt onto the floor.

8) Both men struggled to get control of the gun, which was then fired three times. The first two shots were fired while both men were struggling for the gun; one of these shots hit Craycraft in the stomach. By this time debtor had clear control of the gun and fired the third shot into the ceiling of the bar, asking Craycraft: "Have you had enough?"

9) Neither man had a prior criminal record. Mr. Craycraft, after missing about seven weeks of work, recovered. Debtor was cited in the police report for aggravated assault. Mr. Craycraft has filed no civil suit against debtor.

10) However, Mrs. Craycraft filed suit in Summit County Common Pleas Court for loss of consortium as a result of the incident and received a default judgment on August 8, 1980 against debtor for Twenty Five Thousand Dollars ($25,000.00).

11) On June 18, 1981 debtor filed a voluntary petition in bankruptcy under Chapter 7 of Title 11, United States Code duly scheduling Margaret Ruth Craycraft as an unsecured creditor on Schedule A–3 of his petition for relief. On October 8, 1981, debtor was granted a discharge of all dischargeable debts.

12) On July 20, 1981, Mrs. Craycraft filed an objection to discharge of said debt with this Court contending that the debtor willfully and maliciously injured the property of another person, namely her right of consortium with her husband and therefore said default judgment should be nondischargeable under 11 U.S.C. Section 523(a)(6).

### ISSUE

The issue before this court is whether or not the facts of this case are sufficient within the statutory language of the Code to have the debt declared nondischargeable.

### LAW

11 U.S.C. Section 523(a)(6) provides as follows:

> A discharge ... does not discharge an individual debtor from any debt
>> for willful and malicious injury by the debtor to another entity or to the property of another entity.

This section encompasses injury to intangible personal property or property rights as well as physical damage or destruction. 3 Collier on Bankruptcy (15th Ed.) Section 523.16(1); *In re Maiolo,* 12 B.R. 114 (Bkrtcy. N.D.Ga.1981); *In re Smith,* 11 B.R. 20 (Bkrtcy.N.D.Ohio 1981).

In Ohio, the right of a wife to the consortium of her husband has been held to be a "personal right ... for which she may maintain an action in her own name." *Flandermeyer v. Cooper,* 85 Ohio St. 327, 98 N.E. 102 (1912). See also: *Westlake v. Westlake,* 34 Ohio St. 621 (1878). Hence, if this personal right of Mrs. Craycraft was willfully and maliciously interfered with within the meaning of 11 U.S.C. Section 523(a)(6) by the conduct of the debtor, Mrs.

Craycraft is entitled to a judgment of non-dischargeability as to the default judgment obtained by her against debtor.

Collier on Bankruptcy discusses "willful and malicious" as is meant by Section 523(a)(6) of the Code in the following manner: "An injury to an entity or property may be a malicious injury within this provision if it was wrongful and without just cause or excessive, even in the absence of personal hatred, spite, or ill-will. The word 'willful' means 'deliberate or intentional'; a deliberate and intentional act which necessarily leads to injury." 3 Collier on Bankruptcy (15th ed.) Section 523.16(1).

This interpretation of the term "willful" comes from the Legislative History of Section 523(a)(6) which reads " 'willful' means deliberate or intentional. To the extent that *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904) held that a looser standard is intended, and to the extent that other cases have relied on *Tinker* to apply a 'reckless disregard' standard, they are overruled." H.R. No. 95–595, 95th Cong., 1st Sess. at 365 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6320–6321.

Some courts have interpreted this Legislative History to mandate that in order for the element of "maliciousness" to be present, the debtor must have had a specific intent to do harm to someone's person or property, which cannot be implied under any circumstances. *In re Hodges*, 4 B.R. 513 (Bkrtcy.W.D.Va.1980); *In re Tanner*, 17 B.R. 201 (Bkrtcy.W.D.Ky.1982); *In re Hawkins*, 6 B.R. 97 (Bkrtcy.W.D.Ky.1980).

The issue presented in the *Tinker* case was to formulate a definition of the term "malicious" as used in Section 17(a) of the Act. The issue of what constitutes a "willful" act was not addressed in *Tinker*, as the court stated the act was clearly willful, and therefore this point need not be decided. *In re. McCloud*, 7 B.R. 819 CCH Bkrtcy. Law Reports Section 67,818 (Bkrtcy.M.D.Tn. 1980), citing *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904). On the issue of what constituted malice the Tinker court held:

we think a willful disregard of what one knows to be his duty, an act which is against good morals and wrongful in and of itself, and which necessarily causes injury and is done intentionally, may be said to be done willfully and maliciously, so as to come within the exception. *Tinker v. Colwell* at 487, 24 S.Ct. at 509.

This holding was read extensively by later courts so as to bring actions which showed a "reckless disregard" to the rights of others within the definition of the term willfulness. *Harrison v. Donnelly*, 153 F.2d 588 (8th Cir. 1946); *In Re Truesdail*, 1 B.R. 130 (Bkrtcy.E.D.Mi.1979).

It is the expansive application of the Tinker decision that prompted the comments in the legislative history of Section 523(a)(6), not the need to give the term "malicious" a more restrictive meaning. "It is clear from the legislative history, as it should have been clear from *Tinker*, that 'willful' requires intentional and deliberate action. But nowhere in the legislative history is there expressed any intention to depart from the definition of 'malicious' used in the prior act." *In re Langer*, 12 B.R. 957 (D.C.N.D.1981); *In re McCloud, supra.*

The definition of malice generally used under the prior act has been succinctly set forth by Collier on Bankruptcy, Section 523.16(1), cited above, as being an act "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill will." See also *In re Langer, supra.*

In the present case, this Court finds that the element of willfulness, as is meant by Section 523(a)(6) is present. As previously mentioned, the word willful means deliberate or intentional. Deliberate or intentional means "done with the will or intentionally, and not inadvertently or negligently . . . Intent to do the wrongful act is sufficient and that constitutes the willful part of the act . . ." *In re McGiboney*, 8 B.R. 987 (Bkrtcy.N.D.Ala.1981).

Debtor states that he brought the revolver to the bar for the purpose of protecting

himself from further physical abuse by Mr. Craycraft and because he was afraid of Mr. Craycraft. But, after Mr. Craycraft was struck with the bullet, debtor showed no remorse, but conversely seemed satisfied, animate and victorious.

 A court cannot physically reach inside a man's mind and pull out the answer as to whether past actions were done consciously and deliberately or not. It is also apparent that self-serving testimony at the trial should not be the sole vehicle to determine whether the element of willfulness is present or not. This Court adopts no standard upon which to judge if one's action evinces a willingness to voluntarily inflict injury upon another, but rather holds that this is a factual determination which can only be made on a case by case basis. See *In re Pommerer*, 10 B.R. 935 (Bkrtcy.D. Minn.1981), citing *U.S.F. & G. Co. v. Tanner*, 279 F.Supp. 396 (Colo.1968).

Debtor's act of intentionally bringing a gun when he had just been involved in an altercation compounded by his reaction to Mr. Craycraft's having been shot is sufficient evidence for this court to hold that the debtor willfully intended to cause harm to Mr. Craycraft and is responsible for all the injurious consequences flowing therefrom.

The elements of malice, as is meant by Section 523(a)(6), are also present in this case. In the facts of this case, there was no "just cause" for debtor, who had been drinking, to bring a loaded revolver to a bar in which he just had an argument with another person who had also been drinking. The acts of having the gun, fighting for it, then intentionally firing a third shot into the ceiling of the bar with threats of bodily harm, demonstrate wrongful and malicious intent. Therefore, these acts go to the very essence of what is intended by Congress to be a nondischargeable debt. The debtor's actions were unlawful, unjustified and malicious.

Defendant's answer filed herein alleged that plaintiff's complaint in the State Court was granted by default judgment and that no allegation had been made in that complaint as to willful and malicious injuries. From this defense, it appears that defendant is arguing that the judgment taken in State Court acts as res judicata or collateral estoppel as to the issues of willfulness and malice.

Such an argument must be rejected, however. Res judicata may not be applied in a dischargeability action on an issue which could have been raised in an earlier State Court proceeding, but which was not so raised. *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). Collateral estoppel may only be applied against an issue which was actually and necessarily decided in the prior proceeding *Spilman v. Harley*, 656 F.2d 224 (6th Cir. 1981). As the instant action is one to determine dischargeability of a debt and as the issue regarding the willfulness and maliciousness of the injuries to plaintiff was neither actually nor necessarily decided in the State case, neither res judicata nor collateral estoppel may be applied herein.

THEREFORE, it is the finding of this Court that the debtor's liability to Mrs. Craycraft should be declared nondischargeable and plaintiff should be awarded a judgment of nondischargeability.