**In re Alton BRITT.**

**Christina S. YELVERTON, Administratrix of the Estate of Horace Edward Yelverton, Deceased and Christina S. Yelverton, Individually, Plaintiff,**

v.

**Alton BRITT, Defendant.**

**Bankruptcy No. 9002800 JC.**
**Adv. No. 910030 JC.**

United States Bankruptcy Court,
S.D. Mississippi.

Aug. 12, 1992.

Robert W. King, Jackson, Miss., for plaintiff.

Barney E. Eaton, III, Jackson, Miss., for defendant.

## OPINION

EDWARD R. GAINES, Bankruptcy Judge.

Before the Court for determination is the Complaint to Determine Dischargeability of Unliquidated Claim filed by Christina S. Yelverton, both individually and as Administratrix of the Estate of Horace Edward Yelverton, Deceased. Having considered the pleadings and legal memoranda submitted on behalf of the parties, and having heard the evidence presented at trial, the Court concludes that the debt is dischargeable and that the relief requested in the Complaint should be denied.

## I. FACTS

On January 13, 1990, the debtor, Alton Britt, the debtor's brother, and the debtor's friend, Horace Edward Yelverton, were deer hunting together in Lincoln County, Mississippi. Yelverton shot and wounded a deer soon after their arrival on the hunting property. The three separated in search of the wounded deer.

After a short time, Britt saw something 30 to 40 yards away in the woods and fired his rifle at it, believing he was aiming at a deer. The bullet went through Horace Edward Yelverton's right shoulder. Yelver-

ton died as a result of the gunshot wound 5 days later, after undergoing extensive surgery.

An investigative report by the Lincoln County Sheriff's office concluded that the shooting was a hunting accident and a tragedy. In September of 1990 a Grand Jury ruled it to be an accidental death with no foul play.

Suit was filed against Alton Britt in the Circuit Court of Rankin County where actual and punitive damages in the amount of $2 million were sought.[1] Britt subsequently filed a petition for relief under Chapter 7 of Title 11 of the United States Code, seeking discharge.

Christina S. Yelverton, the widow of Horace Edward Yelverton, filed this action individually and as Administratrix of the Estate of Yelverton, requesting the Court to determine the debt to be nondischargeable under 11 U.S.C. § 523(a)(6).

## II. CONCLUSION

This matter is a core proceeding pursuant to 28 U.S.C. § 157. The Court has jurisdiction to hear this matter under 28 U.S.C. § 1334.

Section 523 of Title 11 of the United States Code provides, in pertinent part, as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity; ...

11 U.S.C. § 523(a)(6). In *In re Quezada*, 718 F.2d 121 (5th Cir.1983) the Fifth Circuit stated the following:

As summarized by a leading treatise, the effect of the 1978 Code's provision is that:

In order to fall within the exception of section 523(a)(6), the injury to an entity or property must have been willful and malicious. An injury of an

---

**1.** Hospital, medical bills and funeral expenses related to the injury and subsequent death of Yelverton totaled $52,393.36.

entity or property may be a malicious injury within this provision if it was wrongful and without just cause or excessive, even in the absence of personal hatred, spite or ill-will. The word "willful" means "deliberate or intentional", a deliberate and intentional act which necessarily leads to injury. Therefore, a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury.

3 Collier on Bankruptcy § 523.16 at 523–118 (15th ed. 1983).

*Id.* at 123. *See also, In re Lefeve,* 131 B.R. 588 (Bankr.S.D.Miss.1991); *In re Fondren,* 119 B.R. 101 (Bankr.S.D.Miss.1990); *In re Hendry,* 77 B.R. 85 (Bankr.S.D.Miss.1987).

■ For a debt based upon the action of a debtor to be determined as nondischargeable under section 523(a)(6), the debtor's action must have "willful" *and* "malicious". A "willful" act is one that is deliberate or intentional. In *In re Adams,* 21 B.R. 301 (Bankr.N.D.Ohio 1982), the Court concluded that, "Deliberate or intentional means 'done with the will or intentionally, and not inadvertently or negligently ...' ". *Id.* at 304. *See also, In re Burke,* 83 B.R. 716, 722 (Bankr.D.N.D.1988) (the element of willfulness simply means a deliberate or intentional action as opposed to one occurring by reason of negligence or accident); *In re Kelly,* 140 B.R. 291 (Bankr. N.D.Okla.1992) (in a case involving injuries from a shooting the court determined that a negligence claim cannot be declared nondischargeable under § 523(a)(6)). In the recent decision in *In re Culp,* 140 B.R. 1005 (Bankr.N.D.Okla.1992), the Court noted the following:

Recently the Court of Appeals of this Circuit appears to have settled on the following interpretation of "willful and malicious" for purposes of § 523(a)(6):

The "willful" element ... simply addresses whether the debtor intentionally performed the basic act complained of ... "Willful" conduct is conduct that is volitional and deliberate and over which the debtor exercises mean-

ingful control, as opposed to unintentional or accidental conduct ... Thus, acts caused by the debtor's negligence or recklessness are not encompassed by this exception ...

*In re Posta,* 866 F.2d 364, 367–68 (10th Cir.1989).

140 B.R. at 1014. *See also, Bankruptcy Service L.Ed.* § 10A:167 (1990); 3 *Collier on Bankruptcy* ¶ 523.16[1] (15th ed. 1991).

In the case of *In re Quezada,* 718 F.2d 121 (5th Cir.1983), a complaint to determine dischargeability of a state court judgment was filed against the debtors where damages had been awarded for injuries inflicted by a pit bulldog owned by the debtors. The Court held as follows:

Under the present facts, no debt for "willful and malicious injury *by the debtor*", Section 523(a)(6), is shown. The debtors Quezadas' intentional harboring of the vicious pit bulldog within their fence is not shown to be conduct intentionally exposing others to harm by the vicious dog. The negligence of the debtors in permitting the dog to escape when they opened the gate is not shown to be conduct designed to cause deliberate or intentional injury ...

We affirm, finding as did the previous courts that the liability for injuries caused by a vicious dog negligently let loose are not excepted from dischargeability in bankruptcy as being a debt for "willful and malicious injury by the debtor" within the meaning of Section 523(a)(6).

*Id.* at 123. The Fifth Circuit provided the following regarding the element of "willfulness".

Prior to its repeal by the Bankruptcy Code of 1978, the predecessor provision in the Bankruptcy Act of 1898 had excepted from dischargeability "liabilities for willful and malicious injuries to the person or property of another." (citations omitted). In *Tinker v. Colwell,* 193 U.S. 473, 24 S.Ct. 505 [48 L.Ed. 754] (1904) the Supreme Court held nondischargeable under this provision a husband's recovery of damages in state court against the bankruptcy-defendant

for adultery committed with the plaintiff's consenting wife. Some courts subsequently interpreted the Supreme Court's rationale as providing that conduct entered into with reckless disregard for the rights of others that caused damage resulted in nondischargeable liability for "willful" injury within the meaning of Section 17(a)(8). Arguably, the harboring of a vicious dog in a crowded neighborhood could be regarded as harm-causing conduct entered into with reckless disregard for the injury it might cause to others. (footnotes omitted).

Nevertheless, by the replacement of the former Act's Section 17(a)(8) with the 1978 Code's Section 523(a)(6), Congress expressly intended to overrule legislatively the reckless-disregard test for nondischargeability. The new statutory language excepting from discharge a debt "for willful and malicious injury *by the debtor* to another," Section 523(a)(6) (emphasis added; being the wording added by the 1978 Code), was explicitly so explained. Both House and Senate reports on versions containing identical language insofar as the final enactment of the provision in Section 523(a)(6), explained that the statutory provision excepted from dischargeability debts for willful and malicious injury by the debtor and that

> Under this paragraph, "willful" means deliberate or intentional. To the extent that *Tinker v. Colwell* [citation omitted], held that a less strict [in

House version, "looser" for "less strict"] standard is intended, and to the extent that other cases have relied on *Tinker* to apply a "reckless disregard" standard, they are overruled.

H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 365 (1977) *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6320-21; S.Rep. No. 95-989, 95th Cong., 1st Sess. 79 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5865. (footnote omitted).

*Id.* at 122.23.[2]

For a contrasting factual scenario, intentional and deliberate conduct was found by the Court under the particular facts in *In re Culp*, 140 B.R. 1005 (Bankr. N.D.Okla.1992) as follows:

> Culp's execution of the false note was intentional and deliberate, with knowledge of the note's falsity. Hence Culp's act was "willful". Culp knew when he executed the note that it would be offered to regulators to deceive them as to FDR's actual net capital ratio, and as a result to enable FDR to continue its irregular operations longer than the law allowed. These illegal consequences were not only reasonably foreseeable, they were specifically intended. Hence Culp's act was "malicious".
>
> Culp says he acted in mere "ignorance and stupidity," ... No doubt Culp was ignorant of the consequences to himself of his act; and he may have stupidly done what others refused to do. But he knew what he was doing, and what con-

---

**2.** There has been much litigation and disagreement over the appropriate meaning of the phrase "willful and malicious" injury under § 523(a)(6). *See, Bankruptcy Service L.Ed.* § 10A: 167–170. The disagreement involves interpretation of the Supreme Court case *Tinker v. Colwell,* 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904) and of the legislative history of § 523(a)(6) of the subsequently enacted 1978 Bankruptcy Code. The *Tinker* case had been utilized by courts to stand for two separate propositions, one allowed a standard of reckless disregard to constitute "willfulness", and the other allowed implied malice to constitute "malicious" conduct. *United Bank of Southgate v. Nelson,* 35 B.R. 766 (N.D.Ill.1983) contains a lengthy discussion of these various interpretations. In conclusory remarks, the Court there stated that:

The Court [in *In re Fussell,* 15 B.R. 1016 (D.C.W.D.Va.1981) ] reasoned that under the new Code, the "reckless disregard" definition overruled by Congress applied only to the "willful" requirement. The Court held that the Code did not statutorily alter the *Tinker* definition of "malicious." Nor did it find anything in the legislative history of the section to suggest that Congress intended to overrule the *Tinker* courts interpretation of "malicious." (citation omitted).

This court believes that *Fussell* represents an accurate reading of the legislative intent underlying this exception ...

35 B.R. at 774. *See also, Chrysler Credit Corp. v. Rebhan,* 842 F.2d 1257 (11th Cir.1988); *St. Paul Fire & Marine Ins. Co. v. Vaughn,* 779 F.2d 1003 (4th Cir.1985).

sequences to others were expected to follow from his act. This is not mere ignorance or lapse of judgment; this is willful malice.

*Id.* at 1014–15.

In *In re Adams*, 21 B.R. 301 (Bankr. N.D.Ohio 1982), "willfulness" for purposes of § 523(a)(6) was also found. In this case, the debtor made a bet with Craycraft on the outcome of a pool game. Both men were drinking. Craycraft won the game. When Craycraft discovered the debtor did not have the money with him to pay on the bet, he struck the debtor with enough force to knock him to the floor. The debtor left to get the money and while he was gone he also tucked a revolver in his belt because he feared more physical abuse. While the debtor was approaching Craycraft on his return, the revolver fell to the floor. The two struggled for control. Two shots were fired during the struggle with one hitting Craycraft in the stomach. The debtor then fired a third shot into the ceiling asking Craycraft if he had had enough. The Court stated the following:

Debtor states that he brought the revolver to the bar for the purpose of protecting himself from further physical abuse by Mr. Craycraft and because he was afraid of Mr. Craycraft. But, after Mr. Craycraft was struck with the bullet, debtor showed no remorse, but conversely seemed satisfied, animate and victorious ...

Debtor's act of intentionally bringing a gun when he had just been involved in an altercation compounded by his reaction to Mr. Craycraft's having been shot is sufficient evidence for this court to hold that the debtor willfully intended to cause harm to Mr. Craycraft and is responsible for all the injurious consequences flowing therefrom.

The elements of malice, as is meant by Section 523(a)(6), are also present in this case. In the facts of this case, there was no "just cause" for debtor, who had been drinking, to bring a loaded revolver to a bar in which he just had an argument with another person who had also been drinking. The acts of having the gun, fighting for it, then intentionally firing a third shot into the ceiling of the bar with threats of bodily harm, demonstrate wrongful and malicious intent. Therefore, these acts go to the very essence of what is intended by Congress to be a nondischargeable debt. The debtor's actions were unlawful, unjustified and malicious.

*Id.* at 305.

In *In re Johnson*, 109 B.R. 885 (Bankr. N.D.Ind.1989) the debtor shot two men in his house and testimony conflicted on the details of the incident. The Court concluded the following:

It is clear to this Court that based on the evidence, and the applicable law, that the Debtor willfully and deliberately placed the revolver in his hand, pointed the same at the Plaintiffs and shot with the express intent of causing serious bodily harm. There is no doubt that the Debtor had every avowed intention to so act, and this conduct certainly constituted more than just an accident or mere gross negligence or a reckless disregard of the consequences. Thus, the Plaintiff has clearly established the first prong of § 523(a)(6) in that it was intentional. There was no evidence from which it could be found that although the act was intentional it was done with just cause or excuse ...

*Id.* at 892. *See also, In re White,* 18 B.R. 246 (Bankr.E.D.Va.1982) (doctrine of transferred intent utilized in finding that debtor intentionally acted when he shot at one person but hit another).[3]

In another shooting case, a different result was reached. In *In re McLemore*, 94 B.R. 903 (Bankr.N.D.Miss.1988), the debtor, who was a former law enforcement officer, was attempting to take the Plaintiff into custody when a scuffle ensued wherein the debtor shot Plaintiff with his service revolver. The Court found that the

---

**3.** Distinction is made from the current case where the intent was to shoot a deer, which was a legal act, rather than a human. In *White,* the original intent was to shoot a human, albeit a different human than the one who actually sustained the injury.

conduct of the debtor which resulted in the infliction of injury was intentional or willful. However, the Court also concluded that the action was with just cause or excuse and was therefore not malicious.

■ The evidence presented in the case currently before the Court indicates that the shooting of Horace Edward Yelverton was an act of negligence or reckless disregard, that tragically resulted in Yelverton's death. There is nothing in the record to indicate that the debtor intentionally or deliberately shot Yelverton. Therefore, the element of "willfulness" for purposes of Section 523(a)(6) has not been established and the relief requested in the Complaint cannot be granted. Without satisfaction of this element, it is unnecessary for the Court to make any determination regarding the requirement of malicious conduct under Section 523(a)(6).

A judgment will be entered consistent with these findings and conclusions pursuant to Federal Rule of Bankruptcy Procedure 9021 and Federal Rule of Civil Procedure 58. This opinion shall constitute findings and conclusions pursuant to Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52.