**In re David Alan DELANEY (Debtor).**

**Danny "Bo" CORLEY, Jr. (Plaintiff),**

**v.**

**David Alan DELANEY (Defendant).**

Bankruptcy No. 92BK–81474.
Adv. No. 93AP–8002.

United States Bankruptcy Court,
W.D. Louisiana,
Alexandria Division.

July 28, 1995.

Thomas C. McBride, and Stephen D. Wheelis, Alexandria, Louisiana, for Debtor.

Charles G. Gravel, Alexandria, Louisiana, for Petitioning Creditor.

## REASONS FOR DECISION

HENLEY A. HUNTER, Chief Judge.

This matter comes before the Court on the complaint of Danny "Bo" Corley, Jr. ("Bo", "Corley" or "plaintiff") to the dischargeability of the debt owed to him by the debtor, David Alan Delaney ("debtor"). The plaintiff filed this action seeking a determination that the debt is not dischargeable under 11 U.S.C. § 523(a)(6). This a Core Proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and by virtue of the reference by the District Court pursuant to Local District Court Rule

22.01 incorporated into Local Bankruptcy Rule 1.2. No party at interest has sought to withdraw the reference to the bankruptcy court, nor has the District Court done so on its own motion. This Court makes the following findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. Pursuant to these reasons, this Court finds that the debt to the plaintiff is not dischargeable.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

The facts of this case were previously litigated in a state court personal injury action brought by Corley against the debtor, the debtor's father, C.H. Delaney ("Mr. Delaney") and Mr. Delaney's homeowner's insurance company, State Farm Fire and Casualty Company. Judgment was rendered for the plaintiff and the case was appealed to the Louisiana Third Circuit Court of Appeals. The trial court had found Corley 40% at fault, Mr. C.H. Delaney 10% at fault and the debtor 50% at fault. The appellate court basically upheld the trial court, but reapportioned the negligence or "fault" of each party—Mr. Delaney was absolved of fault, Corley was found to be 20% at fault and the debtor 80% at fault. That judgement, entered December 15, 1993, is final.[1] *Corley v. Delaney*, 629 So.2d 1255 (La.Ap. 3 Cir.1993).

The parties to this adversary proceeding stipulated to the introduction of seventeen joint exhibits. Additionally the plaintiff offered the state court proceeding "jury charge" (exh. P–18) and the weapon used by the debtor. Exh. P–19. The debtor offered the state court appellate brief of the plaintiff herein. Exh. D–20. All exhibits were admitted. The parties agreed that it was not necessary to offer any live testimony. After admission of the evidence, the debtor's counsel made an oral motion for involuntary dismissal to the plaintiff's case. Presumably, counsel was referring to a dismissal under Federal Rule of Civil Procedure 52(c), although he cited another rule at trial.

The underlying facts in this tragedy were summarized by the Third Circuit as follows:

"Bo and David had known each other for about one year before the shooting. Their relationship was described at trial as 'hot and cold.' On some occasions they were friendly; on others, they exchanged harsh words, usually about their girlfriends. David testified that Bo verbally abused him but that their differences never led to a fight or even to shoving. Bo admitted that he had threatened to 'whip' David in the past.

On the night in question, David and Bo saw each other at a local bar, but they did not speak. Later, after leaving the bar, Bo became angry about David's involvement in an earlier altercation between their girlfriends. At 1:00 a.m. he telephoned C.H. Delaney's residence, where David lived, and asked to speak to David. C.H. answered the phone and then told his wife to see if David was in the house. David had just arrived as Mrs. Delaney began to look for him.

The contents of the telephone conversation between Bo and David were disputed at trial. Bo testified that he wanted to meet David at Camp Livingston, a neutral site, where they would 'just get it out in the open—either we're going to be friends or we ain't.' According to Bo, David replied that he was not leaving his house but that, 'If you want me, you can come over here.' David, however, denied suggesting that Bo come to his house. He testified that he specifically told Bo, 'Do not come to my house.' David's version of the conversation was corroborated by C.H. who was listening on an extension phone and overheard the entire conversation, and by his mother, who was in the same room as her son. Police Chief Spencer Williams offered testimony that corroborated Bo's version of the conversation. Chief Williams testified that shortly after the

---

1. This Chapter 7 bankruptcy case was filed on October 9, 1992. On November 23, 1992, this Court entered an order in the case granting relief from the automatic stay to allow the plaintiff to proceed with the appeal then pending before the Third Circuit Court of Appeals. The order reserved all rights relating to the enforcement of the judgment and the issues of dischargeability to this Court.

shooting David gave a recorded statement in which he stated he told Bo, 'If you want me, you can come over here.'

After this telephone conversation, David went upstairs to his room where he loaded his 12 gauge, double barrel, sawed off shotgun, which he had recently purchased. Downstairs, C.H. saw David with the gun and told him to put it down. David complied, placing the gun on a table in the foyer. C.H. then went to his bedroom to get dressed.

While C.H. was in his bedroom, David noticed two vehicles approach the Delaney residence. One stayed on the street at the end of the Delaney's long driveway; the other, with Bo as a passenger, drove toward the house. David re-armed himself with the shotgun and waited on the porch as the vehicle came up the driveway. He then walked through some bushes and appeared near the passenger side of the vehicle. With his finger on the trigger, David pointed the gun at the car and tapped it on the windshield, while saying something such as 'Get out of the damn car, Danny.' At that point, the gun discharged, with the shot blasting a hole in the windshield and striking Bo on the right side of his face.

Bo testified that he was shot before he made any movement to get out of the car. He had no recollection of the ten days immediately following the shooting. His injuries, more fully discussed below, include the loss of one eye, legal blindness in the remaining eye, the destruction of bone and facial tissue, and permanent disfigurement."

629 So.2d at 1256, 1257.

The debtor's defense is that the incident was an accidental shooting and therefore was not "willful and malicious." Additionally, the debtor maintains that the episode was an accident and that "all facts relating to this matter were elicited at trial by jury resulting in a judgment based on state law negligence theories, thus, the issues raised in the Complaint are barred by the doctrine of res judicata." See Answer To Creditor's Complaint To Determine Dischargeability, filed February 12, 1993. The debtor also asserts "various doctrines of estoppel." Answer, *Ibid.* The theory of the defense distills to the contention that the shooting was accidental. The defendant further asserts that, because there was recovery in the state courts against an insurer on a policy which excludes willful and malicious injury, plaintiff cannot now prevail.

### Applicable Law

■ The burden of proof on an action to determine the dischargeability of actions under 11 U.S.C. § 523 is the preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). In that matter, the Court observed:

"The statutory provisions governing nondischargeability reflect a congressional decision to exclude from the general policy of discharge certain categories of debts—such as child support, alimony, and certain unpaid educational loans and taxes, as well as liabilities for fraud. Congress evidently concluded that the creditors' interest in recovering full payment of debts in these categories outweighed the debtors' interest in a complete fresh start. We think it unlikely that Congress, in fashioning the standard of proof that governs the applicability of these provisions, would have favored the interest in giving perpetrators of fraud a fresh start over the interest in protecting victims of fraud. Requiring the creditor to establish by a preponderance of the evidence that his claim is not dischargeable reflects a fair balance between these competing interests."

498 U.S. at 287, 111 S.Ct. at 659, 112 L.Ed.2d at 765.

Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."

The Supreme Court formerly applied a "reckless disregard" standard to the predecessor provision of § 523(a)(6) [2]. *Matter of Quezada,* 718 F.2d 121 (5th Cir.1983) *citing Tinker v. Colwell,* 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904). However, "Congress expressly intended to overrule legislatively

2. Section 17(a)(8), as amended, formerly 11      U.S.C. § 35(a)(8).

the reckless-disregard test for nondischarge-ability." *Quezada, Id.* at 122.

■ *Quezada* quotes Collier's to explain that for a debt:

"[T]o fall within the exception of § 523(a)(6), the injury to an entity or property must have been willful and malicious. An injury of an entity or property may be a malicious injury within this provision if it was wrongful and without just cause or excessive, even in the absence of personal hatred, spite or ill-will. The word 'willful' means 'deliberate or intentional', a deliberate and intentional act which necessarily leads to injury. Therefore, a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury. 3 Collier on Bankruptcy § .523.16 at 523–118 (15th ed. 1983)."

718 F.2d at 123.

In decisions both earlier and later than *Quezada*, the Fifth Circuit has held that an injury to a person is "malicious" if it is wrongful and without just cause or excuse and "willful" if the debtor intentionally does an act which necessarily leads to injury. *Vickers v. Home Indemnity Company,* 546 F.2d 1149 (5th Cir.1977); *Chrysler Credit Corp. v. Perry Chrysler Plymouth,* 783 F.2d 480 (5th Cir.1986).

The problem in applying these determinations was noted in *In re Limbaugh,* 155 B.R. 952 (Bkrtcy.N.D.Tex.1993). In that case the Court observed:

"In considering dischargeability issues, courts have differed over whether the focus under § 523(a)(6) should be the Debtor's intent to produce the injury, or the intent to perform the act which gives rise to the injury. (Footnote omitted). A significant majority of the courts, including the Fifth Circuit, have held that § 523(a)(6) merely requires an intentional act by the debtor which results in injury to the creditor. *Matter of Quezada,* 718 F.2d 121 (5th Cir.1983), *cert. den'd,* 467 U.S. 1217, 104 S.Ct. 2662, 81 L.Ed.2d 368 (1984); *Seven Elves v. Eskenazi,* 704 F.2d 241 (5th Cir.1983); *In re Dean,* 79 B.R. 659 (Bankr.N.D.Tex.1987).

155 B.R. at 960, 961.

## Analysis

■ In reviewing the state court pleadings, exhs. J–1 to J–6, the selected testimony from the trial, exhs. J–12 [3] to J–17, and the appellate decision this Court can draw one certain conclusion: that the debtor clearly committed willful and malicious acts against the plaintiff and should be held accountable for the results.

Defendant argues that the shooting was an accident. This argument is largely premised on the Third Circuit's opening paragraph reading:

"On August 24, 1989, 19 year old Danny 'Bo' Corley sustained a close range shotgun blast in the face that was accidentally inflicted by David Delaney...."

629 So.2d at 1256.

The Third Circuit also made the following findings:

"The jury obviously believed that the conduct of both young men contributed to the fateful outcome, with David bearing more of the blame because of his use of the firearm....

The actions of both young men were *deliberate, as opposed to inadvertent,* with nothing of significance to be gained.... On the other hand, the circumstances do not justify David's introduction of a firearm into the controversy. David claimed he retrieved the weapon for protection, but we find no evidence of any real danger: only one vehicle approached the Delaney residence, and Bo and David had never fought before. David's use of the firearm was *totally unwarranted* and created a greater risk than any action of Bo's."

629 So.2d at 1258 (emphasis supplied).

Debtor described his actions prior to the shooting as follows:

"1. Well, isn't it true, David, that what you did is you went upstairs, you got the gun, it was unloaded, correct?

---

**3.** The debtor objected to portions of the testimony found in Exh. J–12, that of Officer William

Myers, as not relevant and prejudicial. This Court overruled that objection.

A. Yes, sir.

Q. You loaded the gun. You loaded that unloaded gun with two twelve gauge shells?

A. Yes, sir."

Exh. J–14, p. 178, line 27; p. 179, line 2.

Debtor was questioned further as follows:

"Q. When you walked over to the car and you made some remarks about, 'Come on, Danny, go ahead and get out of your damned car,' correct?

A. Well, sir, I said some things. I don't really remember what they were.

Q. Words to that effect. 'Go ahead, Danny, get out of your damned car,' correct?

A. I also told him to get out of my ... get out of here, too.

Q. You had already pulled the shotgun out and aimed it at the vehicle, didn't you?

A. Yes, sir.

Q. And you were walking up to it with the shotgun pointed at the windshield saying, 'Get out of your damned car, Danny,' correct?

A. Correct.

Q. When you were holding the twelve gauge shotgun, did you have your fingers on the trigger, correct?

A. Inaudible.

\* \* \* \* \* \*

Q. When you walked up to the automobile with your fingers on the trigger, you made motions toward it—towards the passenger side of that vehicle, didn't you?

A. On the windshield, yes, sir.

Q. And that loaded twelve gauge, double barrel, shotgun went off?

A. Yes, sir.

Q. Danny Corley never made a motion to get out of that vehicle, did he?

A. No, sir.

Q. Danny Corley never said a word that you could hear before the blast?

A. No, sir.

Q. You didn't see any weapon or anything of that nature, did you?

A. No, sir.

Q. You saw two individuals in a vehicle, correct?

A. Yes, sir.

Q. And no moves made toward you to get out of that vehicle to start any type of trouble, correct?

A. No, sir."

Exh. J–14, p. 186, line 29; p. 188, line 19.

The jury found that Delaney was at fault and the fault was a legal cause of the plaintiff's injuries. Exh. J–5.

A comparison with other shooting cases is warranted here. In *In re Kelly*, 140 B.R. 291 (Bkrtcy.N.D.Okl.1992), the court dismissed the plaintiff's claim under § 523(a)(6), since, under applicable state law, plaintiff's sole remaining action was under negligence law, the action for assault and battery having been barred by the statute of limitation. Noting that willful and malicious requires more than mere negligence, the Court dismissed the complaint. In *In re Adams*, 21 B.R. 301 (Bkrtcy.N.D.Ohio), debtor and plaintiff were involved in a barroom brawl. Debtor had been drinking. Following an altercation, debtor brought a gun on the premises. Shots were fired. The plaintiff was injured. The Court found the actions by debtor were "unlawful, unjustified and malicious." *Id.* at 305. It rejected a claim that no allegation was made in an earlier state court judgment that the actions were willful and malicious.

A hunting accident was the subject of *In re Britt*, 143 B.R. 419 (Bkrtcy.S.D.Miss.1992). There, debtor, believing he was shooting at a deer, shot another hunter who later died from the injuries. The Court found (after an extensive analysis of shooting cases and the burden of proof) that the shooting was an "act of negligence or reckless disregard ... [but t]here is nothing in the record to indicate that the debtor intentionally or deliberately shot [the other hunter]. Therefore, the element of 'willfulness' for purposes of Section 523 has not been established...." *Id.* at 424.

It is beyond peradventure that loading a twelve gauge, double barreled, sawed-off shotgun and pointing it toward the face of

another unarmed person or against a windshield just beyond the face is wrongful and without just cause. The facts also support a finding that the acts were deliberate, intentional and led to the plaintiff's injuries. The debtor systematically went to his room and loaded the gun. He briefly put it down when reprimanded by his father. Even after his father advised him to relinquish it, he again picked up the weapon, put his finger on the trigger and headed outside to confront the plaintiff.

There are no facts indicating that Corley was about to commit harm to the debtor, his parents or their property. These willful and malicious acts necessarily led to the plaintiff's injury. In short, the evidence at trial, the findings of the jury, and the facts as recited by the Louisiana Court of Appeal are more than sufficient to satisfy plaintiff's burden of proof under a preponderance standard. The facts are clearly distinguishable from *Britt,* and similar to *Adams.*

■ This Court finds no merit in the defense arguments that some sort of estoppel theory bars this plaintiff's claim. Counsel for debtor argues that plaintiff, having originally filed suit on negligence theories, cannot now be heard to assert that debtor's actions were willful and malicious. This theory is not supported by a review of the record. Actually, the original petition in the state court action alleged that the incident was "caused by the **conduct and negligent actions**" of Delaney. Exh. J–1, ¶ 8 (emphasis supplied). Delaney was alleged to be responsible for the injuries "without regard to fault or, in the alternative, is guilty of actionable conduct and negligence...." *Id.* at ¶ 14. The jury was asked to return a verdict concerning Delaney's "fault in causing the injuries to the plaintiff, which fault was a legal cause of accident." Exh. J–5. This Court does not read this instruction as requiring an ultimate conclusion that the incident was solely an accident. The jury was instructed on "[t]he principle of law upon which the plaintiff seeks recovery is Article 2315 of our Civil Code. That Article provides that every

act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Exh. P–18. Thus, there is no showing that there was any finding in the state court founded solely on negligence. While the policy exclusions of Mr. Delaney's homeowner's insurance contract were initially raised in the state court actions,[4] the defense was subsequently withdrawn by an amended answer. Exh. D–20, p. 3.

■ Counsel for debtor cites no case law in support of the various estoppel theories. In *Matter of Dennis,* 25 F.3d 274, 278 (5th Cir.1994), commenting on collateral estoppel, the Fifth Circuit noted the limited circumstances in which bankruptcy courts can apply such preclusive doctrines in the context of dischargeability actions. It observed:

"Hence, in only limited circumstances may bankruptcy courts defer to the doctrine of collateral estoppel and thereby ignore Congress' mandate to provide plenary review of dischargeability issues. Collateral estoppel applies in bankruptcy courts only if, *inter alia,* the first court has made specific, subordinate, factual findings on the identical dischargeability issue in question—that is, an issue which encompasses the same *prima facie* elements as the bankruptcy issue—and the facts supporting the court's findings are discernible from that court's record. *In re Davis,* 3 F.3d 113, 115 (5th Cir.1993); *In re Shuler,* 722 F.2d [1253] at 1256. *See In re Comer,* 723 F.2d 737 (9th Cir.1984) (ruling that bankruptcy courts should not rely solely on state court judgments when determining the true nature of a debt for dischargeability purposes if so doing would prevent the bankruptcy courts from exercising their exclusive jurisdiction to determine whether the debt is dischargeable); *see also Browning v. Navarro,* 887 F.2d 553, 561 (5th Cir.1989) (providing that although the doctrine of res judicata is generally applicable to bankruptcy courts, the contours of the doctrine are 'different for bankruptcy courts ... because tasks which have been

---

4. Policy exclusions listed in the homeowner's insurance contract included "Bodily injury or property damage which is either expected or intended by an insured; or to any person or property which is the result of willful and malicious acts of an insured." Exh. J–2.

delegated to [bankruptcy courts] by Congress may not be interfered with by the decisions of other courts.... [Bankruptcy courts have a job to do and sometimes they must ignore res judicata in order to carry out Congress' mandate.'] )."

In the final analysis, only the reference to the term "accidentally" in the Third Circuit's opinion is supportive of the defendant's argument. But reliance on that term alone (taken as it is out of the context of its other findings, *supra*), is misplaced.

## CONCLUSION

For the reasons previously set forth, there will be judgment in favor of the plaintiff and against the defendant decreeing the judgment in Civil Suit # 157,789 in the Ninth Judicial District Court in and for the Parish of Rapides, non-dischargeable. The debtor's oral Motion for Involuntary Dismissal of the plaintiff's case under F.R.C.P. 52(C), made applicable to bankruptcy adversary proceedings under Federal Rule of Bankruptcy Procedure 7052, is denied. A separate, conforming order will enter.

## ORDER

Pursuant to reasons previously set forth,

**IT IS HEREBY ORDERED** that there is judgment in **favor** of the plaintiff and against the defendant decreeing the judgment in Civil Suit # 157,789 in the Ninth Judicial District Court in and for the Parish of Rapides, non-dischargeable.

**IT IS HEREBY FURTHER ORDERED** that the debtor's oral Motion for Involuntary Dismissal of the plaintiff's case under F.R.C.P. 52(C), made applicable to bankruptcy adversary proceedings under Federal Rule of Bankruptcy Procedure 7052, is **denied.**