**In re Jimmy Wayne McLEMORE.**

**Earl BERRY, Plaintiff,**

v.

**Jimmy Wayne McLEMORE, Defendant/Debtor.**

**Bankruptcy No. 86–01333–BRC–WES. Adv. No. 86–0185–BRC–WES.**

United States Bankruptcy Court, N.D. Mississippi.

Dec. 30, 1988.

See also 795 F.2d 452.

Stephen P. Livingston, New Albany, Miss., for Jimmy McLemore.

Jim Waide, Tupelo, Miss., for Earl Berry.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

This matter comes before the Court on the complaint to determine the dischargeability of a debt filed by Earl Berry, hereinafter referred to as plaintiff or Berry, against Jimmy Wayne McLemore, hereinafter referred to as debtor, defendant, or McLemore; the parties having agreed that the Court could decide this proceeding based on the pleadings, documents, and the transcript of a prior jury trial, as well as, the respective memoranda of law submitted by the parties; and the Court having considered same hereby finds as follows, to-wit:

### I.

The Court has jurisdiction of the subject matter of and the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(I).

### II.

The defendant McLemore is a former law enforcement officer for the Town of Maben, Mississippi. On March 24, 1979, he attempted to take Earl Berry into custody

for an alleged traffic offense. A scuffle ensued wherein McLemore shot Berry with his service revolver. Berry recovered from his wounds and filed suit against McLemore and the Town of Maben, pursuant to 42 U.S.C. § 1983, in the United States District Court for the Northern District of Mississippi (Case No. EC 80–17–05–0). A jury trial was held on November 12 and 13, 1980, before Honorable Orma R. Smith, United States District Judge. The matter was submitted to the jury in the form of a Special Verdict with Interrogatories. A final judgment awarding $10,000.00 to Berry was entered on November 17, 1980.

Two subsequent orders were entered by the district court in the case. First, an order signed on February 26, 1981, by Judge Smith assessed attorneys fees and expenses against McLemore totaling $5173.22. Second, an order signed by Chief Judge William C. Keady on July 1, 1982, taxed expert witness fees against McLemore in the sum of $750.00.

On September 15, 1986, McLemore filed a voluntary petition for relief pursuant to Chapter 7 of the United States Bankruptcy Code. Subsequently, he filed a motion seeking to avoid the judicial lien created by the district court judgment. The motion was granted by order of this Court, dated August 13, 1988, wherein the judicial lien against the exempt real and personal property of McLemore was avoided.

The present action, seeking to have the judgment debt adjudicated as nondischargeable pursuant to 11 U.S.C. § 523(a)(6), was filed by Berry on December 16, 1986. The debtor responded by contending that the injury to Berry was the result of only negligent conduct which would allow the debt to be dischargeable for failure to meet the "willful and malicious" standard required by 11 U.S.C. § 523(a)(6). In the alternative, the debtor contended that even if the judgment debt was found to be nondischargeable, costs and attorney fees taxed against the debtor by the final judgment and the two subsequent orders should be adjudicated as dischargeable since they did not result from any willful and malicious act.

### III.

■ Upon a careful reading of the record of the district court proceeding, this Court could find no evidence that the issue of willful and malicious conduct on the part of the debtor was actually raised and litigated. In considering the earlier proceeding, this Court was particularly interested in discerning the standard applied by the jury in its decision to award punitive damages. If the record of a prior proceeding clearly reveals that punitive damages were awarded based on a willful and malicious standard, collateral estoppel will apply to bar relitigation of whether the conduct was "willful and malicious" in a subsequent bankruptcy dischargeability action. *Combs v. Richardson*, 838 F.2d 112, 114 (4th Cir.1988). The initial review of the record of the district court trial failed to disclose a jury instruction pertaining to the standard to be applied in determining if an award for punitive damages was warranted. Therefore, this Court requested and received from the official court reporter present at the district court trial a transcription of the punitive damages instruction as read to the jury by Judge Smith. The transcription of the oral instruction, which will be entered in the present proceeding as Court's Exhibit No. 1, contains the following sentence: "And, if you find that the acts of the defendant were willful, deliberate and malicious, or *in reckless disregard for the rights of the plaintiff,* you are authorized in your discretion to award punitive damages." (emphasis added)

■ The jury was given the option of applying either a "willful, deliberate and malicious" standard or a "reckless disregard" standard. While the former standard is nearly identical to that of 11 U.S.C. § 523(a)(6), the latter is not. "Reckless disregard" does not rise to "willful and malicious" conduct and will no longer support a § 523(a)(6) [11 U.S.C. § 523(a)(6)] cause of action. The pre-Code decision, *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904), which allowed reckless disregard to support a nondischargeability finding, was not incorporated

into the 1978 Code. *See*, 11 R.Rep. No. 95–595 (95th Cong., 1st Sess. 363–365 (1977); S.Rep. 95–989, 95th Cong., 2d Sess. 77–80 (1978), U.S.Code and Cong. and Admin.News 1978, 5787.

■ The record of the district court trial does not reveal which standard was actually applied by the jury. Interrogatory No. 5 of the Special Verdict with Interrogatories shows only that the jury responded "yes" to the following question: "Do you find from a preponderance of the evidence that plaintiff is entitled to recover punitive damages from defendant McLemore?" Even though punitive damages were awarded, it is unclear from the record whether the jury found the debtor's conduct to be "willful, deliberate and malicious" or in "reckless disregard." This uncertainty is fatal to the application of collateral estoppel because it is unclear whether the issue sought to be precluded in the present proceeding is the same one which was raised and determined by the jury in the earlier proceeding. In the absence of the identity of issues requirement, this Court cannot afford collateral estoppel effect to the district court judgment.

### IV.

■ When determining the dischargeability of a particular debt pursuant to 11 U.S.C. § 523(a)(6), a bankruptcy court is not bound by an earlier proceeding relating to the debtor's conduct and is free to draw independent conclusions from the record therein. *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979); *Carey v. Bell*, 615 F.2d 370 (5th Cir.1980). Within the Fifth Circuit, "willful and malicious" under 11 U.S.C. § 523(a)(6) has been defined to mean "without just cause or excuse." *Seven Elves, Inc. v. Eskenazi*, 704 F.2d 241 (5th Cir.1983). "Willful means intentional and malicious adds the absence of just cause or excuse." *Id.* at 245.

In conducting an independent review of the record in the district court proceeding, this Court examined a transcription of the testimony of Earl Berry and the testimony of the debtor, a transcription of the jury instruction given pertaining to punitive damages, the Special Verdict with Interrogatories, and the final judgment. The Court finds the following testimony, elicited from the debtor by his attorney in the course of the district court trial, to be conclusive on the issue of willful and malicious conduct:

Q Do you recall this incident with Mr. Berry?

A Yes, sir, I do.

Q Would you tell us what you recall from the time that you saw Mr. Berry that night?

A I had a car stopped that night on the street just right off of Highway 15, and while I was talking to the driver of that vehicle another vehicle came by, and they were driving in an erratic manner, back and forth, and they were blowing the horn, and I could hear some loud talking or screaming inside the vehicle. So, I gave the driver's license back to the person that I had stopped and went to check on that one car to see what the problem was inside.

And I turned the blue lights on the patrol car, and we went approximately four or five city blocks before I seen the brake lights on the car come on. And then the car stopped in front of the library, right there on main street.

And I was getting out of my patrol car when the driver got out of the car that I had just stopped, and he met me back there approximately between both vehicles. And he started telling me right off that he wasn't the one that was blowing the horn in the car, it was someone else. And at that time another person got out of that car who was obviously intoxicated at the time, having a hard time standing. She couldn't talk very plain. Her speech was tied together and slurred. She was having a hard time standing up. So, I put her under arrest for public drunkenness, and I helped her get into the back seat of the patrol car. She was unable to get in by herself.

And then I put the driver of the car under arrest, to take him to the County Jail, to run an intoximeter test on him, to try to find out the amount of alcohol in

his blood, to see if he was okay to go ahead and proceed on driving.

And once I put him under arrest he told me that he wasn't going to jail, that he wanted to know what he was under arrest for. I told him to go ahead and get on in the car and we would talk about it on the way down there. And he just kept on, several times telling me that he wasn't going, that he wanted to talk about this first, that he didn't think that he had to go.

And I put my hand on his shoulder to, you know, help him get on in the car, show him that I really wanted him to go on and get in there. And when I did done that he grabbed my jacket. I had a light jacket on that night, and he grabbed the collar of it and started slinging me back and forth, from the door of the car to around the fender of it. And when he done that, I hit him a couple of times, to try to get him to stop, and he kept on doing it. And I hit him probably another time or two, and he stopped slinging me around.

And at that time the third person in the vehicle had gotten out, and I didn't see him come up at that time. But he had walked up to us, and the driver of the vehicle, that was holding me, looked over to this person and said, just real calmly, "Do you see what he is doing to me". And this person told that driver, he said, "Go ahead and get on in the car, don't cause any trouble. He has already put you under arrest, don't get into it any deeper." And when the driver looked back at me, he made the comment that he wasn't going to jail with me. And when he said that, he started swinging at me. And he was hitting me very fiercely, very hard, and he knocked me down to my knees, and I was trying to get back up, and he just kept hitting me, and I couldn't stand up.

I pulled my pistol out and shot one time, and I couldn't see him too good because there was a little blood in my eye and it was hurting, it was kind of tingling. And I could feel him, he was still hitting me, and I shot him, I shot the pistol the second time. And when I shot

the second time he quit hitting me, and he turned and run off....

In addition to the above testimony, elicited from McLemore, Berry admitted that he had been drinking on the night of the altercation, stating that he had consumed four or five beers and two "swallows" of whiskey. Berry admitted that he struck McLemore with his fist, knocking him to the ground. This was evidenced by the injuries that McLemore sustained in the vicinity of his eye and on the back of his head.

Berry was subsequently convicted on the felony charge of assaulting a police officer as a result of this incident, which indicates that the State of Mississippi convinced a separate criminal trial jury that Berry was guilty of perpetrating an assault on McLemore beyond a reasonable doubt.

Considering all of these relevant factors, this Court believes that McLemore's version of the events surrounding the altercation was more credible than Berry's version. The Court would hasten to add that it was totally surprised that the civil trial jury returned a verdict against McLemore, particularly for punitive damages.

■ In light of the above findings, this Court is of the opinion that while the conduct of the debtor, which resulted in the infliction of an injury to Earl Berry, was intentional, it was also *with* just cause or excuse. Therefore, the debtor's conduct was "willful" under 11 U.S.C. § 523(a)(6), but was not "malicious." Consequently, the debt evidenced by the district court judgment is not the product of a willful *and* malicious injury inflicted by the debtor on another entity. The final judgment, as well as, the costs and attorney's fees do not qualify as an exception to discharge afforded by 11 U.S.C. § 523(a)(6). As such, each of the obligations owed by the defendant to the plaintiff shall be discharged.

An Order will be entered consistent with this Opinion.