In re William Farris **TRANTHAM,** Debtor.

**Monsanto Company, Plaintiff,**

v.

**William Farris Trantham, Defendant.**

Bankruptcy No. 02–27859–K.
Adversary No. 02–0596.

United States Bankruptcy Court,
W.D. Tennessee,
Western Division.

Dec. 18, 2002.

Joseph N. Mole, New Orleans, LA, Toni Campbell Parker, Memphis, TN, for Monsanto Co.

William M. Gotten, Memphis, TN, for Mr. Trantham.

Norman P. Hagemeyer, Memphis, TN, Chapter 7 Trustee.

**MEMORANDUM AND ORDER RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT COMBINED WITH NOTICE OF THE ENTRY THEREOF**

DAVID S. KENNEDY, Chief Judge.

Plaintiff, Monsanto Company ("Monsanto"), has filed a motion for summary judg-

ment, pursuant to FED. R. BANKR. P. 7056, arising out of the above-captioned adversary proceeding previously filed by Monsanto against the defendant, the above-named chapter 7 debtor, Mr. William Farris Trantham ("Mr. Trantham"). Monsanto seeks a judicial determination that the particular debts owed to it in the aggregate amount of $592,677.89 arising out of a prepetition patent infringement judgment against Mr. Trantham are nondischargeable under 11 U.S.C. § 523(a)(6).

The ultimate and sole issue for judicial determination here is whether Monsanto's prepetition judgment for patent infringement should be excepted from Mr. Trantham's chapter 7 general discharge. By virtue of 28 U.S.C. § 157(b)(2)(I), this is a core proceeding. The court has subject matter jurisdiction under 28 U.S.C. §§ 1334(a)-(b) and 157(a)-(b). Based on the relevant prepetition record of the United States District Court for the Western District of Tennessee and also the relevant postpetition record of the Bankruptcy Court including the pleadings[1] and statements of counsel, the following shall constitute the court's findings of fact and conclusions of law in accordance with FED. R. BANKR. P. 7052.

### The Parties

Mr. Trantham, the debtor in this chapter 7 case and also the defendant in the above-captioned adversary proceeding, resides in Tipton County, Tennessee, and farms primarily cotton and soybean crops in West Tennessee. Mr. Trantham is a career farmer. Like many other farmers throughout America, Mr. Trantham has encountered difficult circumstances over the years. (Mr. Trantham previously filed a chapter 7 case in the early 1980's due to financial distress.)

Monsanto, a global agribusiness, serves farmers by engaging in the business of developing, manufacturing, licensing, and selling agricultural biotechnology, agricultural chemicals, seed, and other agricultural products including scientifically engineered cotton and soybean seeds. More specifically here, Monsanto has patented a genetically superior/ genetically-engineered seeds for cotton and soybean production under the brand names Roundup Ready®, Bollgard®, and Bollgard with Roundup Ready® that are resistant to certain insecticides and herbicides. This biotechnology involves genetically altered cotton and soybean seeds and was the subject of the parties' prepetition patent infringement lawsuit in the United States District Court for the Western District of Tennessee (discussed more fully hereinafter). Monsanto's patented seeds allow farmers to more efficiently harvest cotton and soybean crops; however, the use of this biotechnology is subject to various costs for each unit used and other regulations.

Monsanto markets and authorizes use of the seed Roundup Ready®, Bollgard®, and Bollgard with Roundup Ready® to growers at the retail level through local cooperatives and agribusinesses. Monsanto profits from not only the sale of the seeds, but also from the revenues derived from the payment of licensing fees which must be paid by growers for each commercial unit of seed purchased. The Monsanto licensing agreements also restrict growers (*e.g.*, farmers) from saving excess seeds or seeds not planted in the current crop year for use in subsequent years. In essence, farmers purchasing the seeds de-

---

1. Monsanto has attached five exhibits labeled plaintiff's Exhibits A–E to its instant motion for summary judgment that represent the relevant prior District Court record which in- cludes an original and amended patent infringement complaint, jury verdict form, two orders, and memoranda addressing various post-trial matters filed by the parties.

veloped by Monsanto must either market a crop derived in the form of a commodity and/or dispose of the seed in a terminal market. The required use or disposition of the seeds requires growers to purchase new seed as well as absorb new licensing/technological fees for each subsequent year a crop is planted.

Notice of the patents and intellectual property rights are typically provided on the bags containing the patented seeds identifying the content of the bag with a U.S. patent number. Claimants whose patents are infringed have the statutory right to bring a civil action against infringers of the patents or other registered intellectual property rights seeking, for example, injunctive relief, damages, an award of reasonable attorney's fees, and other related costs. *See* 35 U.S.C. §§ 281, 283, 284, and 285.

### Prepetition Background Facts and District Court Judicial History

The relevant prepetition background facts and judicial history in the District Court patent infringement action involving these parties may be summarized as follows. Prior to his 1999 crop planting season, Mr. Trantham purchased cottonseeds from Burlison Gin and soybean seeds from an entity named Terra Seed and Chemical Company in order to plant crops for that growing year. After harvesting the crops in 1999, Mr. Trantham retained portions of both the Roundup Ready® cottonseeds and soybean seeds that were believed to be genetically resistant to Roundup herbicide.

Being able to identify the portion of the seeds that were resistant to Roundup her-bicide, Mr. Trantham planted the retained seeds in the spring of 2000, but he failed to pay the required licensing fees. He treated his crops with Monsanto's Roundup® herbicide in order to maximize the yields for that crop year seeking to enhance the efficiency and profitability of his farming operations.

On June 25, 2000, Pharmacia Company/Monsanto (plaintiff herein) filed an original civil action patent infringement lawsuit in the United States District Court for the Western District of Tennessee against Mr. Trantham for retaining and planting the seeds and also for failing to pay the required licensing fees in violation of the license agreements for use of the patented seed technology. Monsanto later obtained judicial authorization from the District Court to collect samples of Mr. Trantham's cotton and soybean crops in order to test the samples for the presence of the patented biotechnology. The sampling results indicated that 93% of the cotton samples and 100% of the soybean samples contained Monsanto's patented seed technology.

Subsequently, Monsanto amended its original District Court complaint to specifically include three counts of patent infringement. All three counts alleged that Mr. Trantham infringed upon a duly and legally issued patent for Roundup Ready® cottonseeds and Roundup Ready® soybean seeds and used the patented agricultural seeds without authorization from Monsanto in violation of title 35 U.S.C. § 271.[2] Monsanto successfully obtained summary judgment in the patent infringement action.

---

**2.** 35 U.S.C. § 271(a) is entitled *Infringement of Patent* and states as follows:

    (a) Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.

Monsanto's prepetition patent infringement action also included allegations of Mr. Trantham's unlawful retention of soybean seeds purchased with a legitimate license from the previous year and the unlawful retention, ginning, and spraying of herbicide on the cottonseeds that he planted to eliminate non-patented seeds without remitting the necessary licensing/royalty fees owed to the patent holder Monsanto. A jury trial was held on September 25–28, 2001, for the dual purpose of determining whether Mr. Trantham willfully infringed upon Monsanto's patent and to establish the amount of damages as result of the patent infringement.

The jury issued its unanimous verdict on September 28, 2001, concluding that the appropriate amount of damages that should be levied against Mr. Trantham was $34,392.00. The jury also found that Mr. Trantham willfully infringed upon Monsanto's patented seed technology. Multiple post-trial motions were filed and were addressed in two separate orders and accompanying memoranda by the Honorable Thomas A. Wiseman, Jr. Senior United States District Judge for the Middle District of Tennessee, sitting by designation in the Western District of Tennessee.

Judge Wiseman's first order and memorandum dated March 5, 2002, addressed and decided three specific issues. Firstly, Monsanto was not entitled to a summary judgment as a matter of law that the appropriate royalty/licensing fee was conclusively established at $205.00 per bag of seed owed on the retained bags of cottonseed because the evidence was not definitely and incontrovertibly established at $205.00. The parties introduced evidence to support both a high and low valuation in regard to the reasonable royalty for each bag of cottonseed resulting in a genuine issue of fact regarding the correct amount of damages. The conflicting evidence rendered the issue inappropriate for judgment as a matter of law.

Secondly, Judge Wiseman held that the jury finding of willfulness exhibited by Mr. Trantham should not be disturbed. Judge Wiseman's memorandum substantiating the finding of willfulness clearly articulated and found that Mr. Trantham's actions indeed were willful under the circumstances. Judge Wiseman noted that the issue of willfulness is a question of fact for the jury, and "liability for willfulness of infringement turns on consideration of intent, state of mind, and culpability." *See* the Memorandum dated March 5, 2002, at page 3; plaintiff's Exhibit D (citing *National Presto Industries, Inc. v. West Bend Co.*, 76 F.3d 1185, 1192 (Fed.Cir.1996)). Additionally, Judge Wiseman affirmed the fact that "ample evidence" existed to support a jury finding that Mr. Trantham willfully infringed Monsanto's patents, and even noted that Mr. Trantham admitted at trial that he simply could not (or did not want to pay) the prices Monsanto charged to utilize the patented seeds. *See* the Memorandum dated March 5, 2002, at page 4; plaintiff's Exhibit D. Clearly, Judge Wiseman affirmed the jury's finding and conclusively decided the issue of willfulness.

Thirdly, Judge Wiseman ordered that a new trial should be held to address the issue of cottonseed damages and the appropriate royalty owed to Monsanto to properly reflect the true market price of each of the 424.5 bags of cottonseed unlawfully retained. Judge Wiseman eloquently conditioned the new trial on the parties' mutual acceptance of a royalty rate of $205.00 per bag (*i.e.*, totaling an aggregate figure of $87,022.50) on the cottonseed patent infringement damages within 10 days of the entry of the order. The parties agreed on the royalty rate suggested by Judge Wiseman in lieu of another contest-

ed trial. The remaining outstanding issue between the parties involved Monsanto's post-trial motion to enhance (*i.e.*, treble) the damages, award attorney and expert witness fees, and award interest on the judgment under 35 U.S.C. §§ 284—285 and 28 U.S.C. §§ 1821(b) and 1920.

In the second order, Judge Wiseman determined that the aggregate amount of compensatory damages amounted to $106,132.50; and under the circumstances, the damages were trebled under 35 U.S.C. § 284 in favor of Monsanto totaling $318,397.50. Judge Wiseman also awarded prejudgment interest of $9,005.27 and attorneys' fees of $265,275.12 against Mr. Trantham resulting in an aggregate judgment of $592,677.89.[3] In addition, Mr. Trantham was permanently enjoined from further infringing upon Mosanto's patents. *See* Order dated May 14, 2002; plaintiff's Exhibit E. The injunction permanently enjoined Mr. Trantham from making, using, or selling any product patented by Monsanto unless Mr. Trantham uses a Monsanto product according to the terms of a legitimately purchased license. Judge Wiseman substantiated the imposition of the permanent injunction as a matter of course absent persuasive evidence further infringement will not occur relying on *W.L. Gore & Assoc. v. Garlock, Inc.*, 842 F.2d 1275, 1281 (Fed.Cir.1988), and *Hoechst Celanese Corp. v. B.P. Chemicals, Ltd.*, 846 F.Supp. 542, 550 (S.D.Tex.1994). *See* Memorandum entered May 14, 2002, at page 9–10; plaintiff's Exhibit E.

In the memorandum discussing the factors utilized to determine whether damages should be enhanced, Judge Wiseman examined the circumstances surrounding Mr. Trantham's motivation to harm Monsanto when he infringed upon the patent. Although Judge Wiseman trebled the damages, he interestingly and expressly found that no evidence existed that Mr. Trantham was motivated by an intent to harm Monsanto.[4] *See* Memorandum entered May 14, 2002, at page 5; plaintiff's Exhibit E. Judge Wiseman also interestingly and expressly found that in addressing the propriety of levying expert fees against Mr. Trantham that "neither fraud, abuse of judicial process, or any other gross injustice [was] perpetuated by Mr. Trantham." *See* Order entered May 14, 2002 at page 8; plaintiff's Exhibit E.[5]

### The Bankruptcy Case and Resulting Dischargeability Litigation

On May 10, 2002, Mr. Trantham filed an original petition under chapter 7 of the Bankruptcy Code ("Code"). The chapter 7 case trustee, Norman Hagemeyer, Esquire, filed a no-asset report on June 18, 2002. The court fixed August 16, 2002 as the deadline (*i.e.*, bar date) for parties in interest to file complaints objecting to Mr. Trantham's general discharge under section 727 and for creditors to file complaints seeking to have their particular debts to be excepted from his general discharge under section 523(c). Monsanto, the only objector in this case, timely filed the instant complaint under section 523(a)(6) seeking to have its prepetition patent infringement judgment to be excepted from Mr. Trantham's general discharge. On August 21, 2002, Mr. Trantham appropriately received his chapter 7 discharge under section 727,

---

3. Monsanto also was granted expert witness fees determined upon submission of an affidavit reflecting such fees in accordance with 28 U.S.C. § 1821.

4. *See In re Markowitz*, 190 F.3d 455 (6th Cir.1999)(discussed more fully hereinafter regarding the Sixth Circuit subjective test regarding the "willful and malicious" phrase contained in 11 U.S.C. § 523(a)(6)).

5. *Id.*

as required under the circumstances by virtue of FED. R. BANKR. P. 4004(c), because no section 727(a) complaints were filed against him. The "Discharge of Debtor" (OBF 18), however, specifically reserved a judicial determination regarding Monsanto's instant adversary proceeding seeking a nondischargeable judgment under section 523(a)(6).

On August 30, 2002, Mr. Trantham filed a motion, pursuant to FED. R. BANKR. P. 7012(b) and FED. R. CIV. P. 12(b)(6), seeking to dismiss the section 523(a)(6) nondischargeability complaint filed by Monsanto. Mr. Trantham relied on the prepetition District Court judgment and asserted that Monsanto's section 523(a)(6) complaint failed to state a claim upon which relief could be granted. This court disagreed with Mr. Trantham, and on October 1, 2002, denied his motion to dismiss in an oral bench ruling making findings of fact and conclusions of law that were subsequently manifested in a bare order entered on this court's docket on October 17, 2002, that also scheduled oral arguments for October 29, 2002, on Monsanto's instant motion for summary judgment pursuant to FED. R. BANKR. P. 7056.

Mr. Trantham then filed a response to Monsanto's summary judgment motion essentially admitting and conceding the section 523(a)(6) issue of willfulness involving his prepetition acts and conduct, but very strongly refuting Monsanto's assertion that he acted *maliciously* as contemplated under section 523(a)(6) of the Code. Mr. Trantham first asserts that the prepetition District Court record fails to sufficiently establish that his infringement of Monsanto's patent and disregard to pay the required licensing fees for the patented seed technology constitutes both a "willful and malicious injury" under section 523(a)(6). Since the issue of maliciousness was not specifically raised by Monsanto in the prepetition District Court civil action, Mr. Trantham initially and strategically asserts, for purposes of Monsanto's summary judgment motion, that the doctrine of collateral estoppel does not apply. He firstly requests that this court conduct a special and limited evidentiary hearing focusing solely on the issue of maliciousness for dischargeability purposes under section 523(a)(6) of the Code.

Alternatively, Mr. Trantham asserts, *inter alia*, that the doctrine of collateral estoppel should apply because Judge Wiseman's memorandum addressing the posttrial motion enhancing the monetary damages found that no evidence existed that Mr. Trantham was motivated by an intent to harm Monsanto or its property, and also Judge Wiseman further found neither fraud or any other gross injustice existed on Mr. Trantham's part. Thus, Mr. Trantham contends that these specific findings by Judge Wiseman preclude this court from concluding that Mr. Trantham acted "maliciously" as contemplated within the section 523(a)(6) dischargeability context. In essence, Mr. Trantham alternatively contends that the prepetition District Court action was fully litigated on the merits, and the summary judgment motion appropriately should result in a denial of Monsanto's section 523(a)(6) complaint filed against him in the Bankruptcy Court.

For purposes of the motion for summary judgment, Monsanto relies on the doctrine of collateral estoppel (*i.e.,* issue preclusion) and cites, among others, the holding of *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).[6]

---

**6.** In response to a question asked by the court, Monsanto states that procedurally this matter could be before the bankruptcy court on a FED. R. CIV. P. 12(c) motion for judgment on the pleadings made applicable here by FED. R. CIV. P. 7012(b). This court agrees that the

Monsanto collectively urges this court to reject Mr. Trantham's request for a special and limited evidentiary hearing on the issue of malice under section 523(a)(6), apply the findings in the prepetition District Court action, trigger the doctrine of collateral estoppel, and grant summary judgment in its favor. Monsanto states the Sixth Circuit test for "willful and malicious injury" arises when one merely "desires to cause the consequences of his act, or . . . believes that the consequences are substantially certain to result from it [the act]," citing *Gonzalez v. Moffitt (In re Moffitt)*, 252 B.R. 916 (6th Cir. BAP 2000), and *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir.1999).

Monsanto argues that Mr. Trantham knew that his intentional acts of using its seeds and infringing upon its patents would injuriously harm Monsanto because Mr. Trantham knowingly utilized Monsanto's seed technology without paying the required fees, as he admitted in the District Court litigation that he could not afford to pay the licensing fee or did not want to pay the price Monsanto charged. Since the conduct of Mr. Trantham resulted in a jury and judicial finding of willfulness coupled with an award of treble damages and attorneys fees, Monsanto further argues that an intentional tort occurred justifying a nondischargeable judgment under section 523(a)(6) of the Code.

### Legal Analysis

■ By virtue of section 523(c), *infra,* the bankruptcy court (or the district court when exercising original bankruptcy jurisdiction) possesses the exclusive jurisdiction to determine the non-dischargeability of particular debts under subsections 523(a)(2), (4), *(6)*, and (15) of the Code. *See Spilman v. Harley*, 656 F.2d 224, 226 (6th

Cir.1981)(noting that the Congress granted the exclusive power to determine dischargeability of debts in bankruptcy proceedings to the bankruptcy court in the 1970 Amendments to the Bankruptcy Act). A bankruptcy court, however, is not absolutely bound by an earlier proceeding relating to the debtor's conduct and may draw independent conclusions from the record of the earlier proceeding regarding the dischargeability of such a debt under, for example, section 523(a)(6) of the Code. *See Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979); *In re McLemore*, 94 B.R. 903, 906 (Bankr.N.D.Miss. 1988).

■ Monsanto, as the creditor/plaintiff seeking to except a particular debt from discharge under section 523(a)(6), bears the burden to show which part of the prepetition District Court record is based on a "willful and malicious injury" and also bears the ultimate burden of proof to demonstrate by a preponderance of the evidence that all the elements of section 523(a)(6) are sufficiently met. *See Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Exceptions to discharge are strictly construed against the objecting creditor and liberally in favor of the debtor. *Gleason v. Thaw*, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915); *In re Ward*, 857 F.2d 1082, 1083 (6th Cir. 1988); *compare* 11 U.S.C. § 523(a)(2)(C) (not applicable here).

Whether the prepetition patent infringement judgment of $592,677.89 plus fees and costs owed to Monsanto constitutes a non-dischargeable debt for a "willful and malicious injury" by Mr. Trantham to Monsanto or to the property of Monsanto requires careful consideration of the statu-

matter is ripe and appropriate for disposition via a pretrial motion pursuant to Fed. R. Civ. P. 12(c) seeking a judgment on the pleadings

and/or Fed. R. Bankr. P. 7056 for summary judgment.

tory language in section 523(a)(6) and close scrutiny of the particular facts and circumstances. It is sometimes an arduous task to apply section 523(a)(6) issues in a commercial setting involving, for example, an individual farmer experiencing financial distress.

■ It is noted that there is no constitutional right to obtain a bankruptcy discharge. *U.S. v. Kras (In re Kras)*, 409 U.S. 434, 446, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973); *In re Krohn*, 886 F.2d 123 (6th Cir.1989). Unquestionably, a bankruptcy discharge is a privilege, not a right accorded all debtors. *In re Tabibian*, 289 F.2d 793, 795 (2nd Cir.1961); 11 U.S.C. §§ 727(a) and 523(a). The nation's bankruptcy laws do not afford even an honest debtor an absolute fresh start in all situations.

■ Section 523(a) of the Code currently enumerates 18 congressionally created policy exceptions to a chapter 7 debtor's general discharge. To create a successful exception to discharge under section 523(a)(6), the acts and conduct complained of must be an intentional tort or in the nature of a tort; and this requirement should not be understated here. Obvious nondischargeable injuries covered by section 523(a)(6) include, for example: (1) intentional, violent, or reckless torts such as assault, mayhem, arson, sexual assault, or murder; (2) false arrest; (3) tortious interference with the contractual rights of another; (4) slander; (5) tortious unauthorized selling of collateral subject to a security interest and not appropriately remitting the proceeds to the holder of the secured claim (*i.e.*, certain conversion actions); (6) wire tapping; and (7) certain political protests. Injuries covered by the section 523(a)(6) exception to discharge are not confined to physical damages: "[A]n injury [willful or malicious] to intangible personal property

rights is sufficient." 3 COLLIER ON BANKRUPTCY ¶ 523–12[2] (15th ed. Rev.2002).

■ Applicable for consideration in this proceeding is section 523(a)(6) of the Code, which excepts from discharge a particular debt arising out of the debtor's "willful and malicious injury" to the person or property of another. The outcome of dischargeability complaints under section 523(a), especially in the subsection 523(a)(6) context, is very fact specific and typically is decided on a case-by-case basis considering a totality of the particular facts and circumstances. More specifically, section 523(a)(6) provides, in relevant part, that:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
>
>    \*    \*    \*    \*    \*    \*
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

Section 523(c)(1) of the Code provides that:

> Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind in paragraph (2), (4), (*6* ), or (15) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), (*6*), or (15), as the case may be, of subsection (a) of this section. (emphasis added).

In *Perkins v. Scharffe (In re Scharffe)*, 817 F.2d 392, 394 (6th Cir.1987), the Sixth Circuit held that "willful and malicious injury," as used in section 523(a)(6), could be found when an actor intends the committed acts regardless of whether he/she intends the consequences. Subsequently, in *Kawaauhau v. Geiger (In re Geiger)*, 523

U.S. 57,61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), a medical malpractice case, the Supreme Court addressed the "pivotal question" of whether the "§ 523(a)(6) compass cover[s] acts done intentionally, that cause injury... or only acts done with the actual intent to cause injury." In answering this question, the Supreme Court held that only acts done with the intent to cause injury—and not merely acts done intentionally—rise to the level of "willful and malicious injury" for purposes of satisfying section 523(a)(6). *See id.*

The Supreme Court in *Geiger*, 523 U.S. at 61, 118 S.Ct. 974, reasoned as follows:

The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, i.e., "reckless" or "negligent," to modify "injury." Moreover, as the Eighth Circuit observed, the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the consequences *62 of an act," not simply "the act itself." RESTATEMENT (SECOND) OF TORTS § 8A, Comment a, p. 15 (1964) (emphasis added).

■ Approximately a year after the Supreme Court's *Geiger* decision, the Sixth Circuit revisited the meaning of "willful and malicious injury" under section 523(a)(6). The Sixth Circuit held that the prior *Perkins* standard for "willful and malicious injury" was effectively overruled by the Supreme Court in Geiger, and "we now expressly overrule that standard."

*Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 465 (6th Cir.1999). The *Markowitz* court articulated the Sixth Circuit's new standard in light of *Geiger* as follows:

[We] now hold that unless the actor desires to cause the consequences of his act, or believes that the consequences are substantially certain to result from it, he has not committed a "willful and malicious injury" as defined under § 523(a)(6).

*Id.* at 464 (citation omitted). A subjective standard was adopted by the Sixth Circuit in *Markowitz*.

■ The Congress used the conjunction "and" in the "willful and malicious injury" phrase contained in section 523(a)(6) of the Code. The word "and" is commonly defined as a "particle expressing the general relation of connection or addition, used to conjoin word with word, phrase with phrase, clause with clause." WEBSTER'S NEW COLLEGIATE DICTIONARY 33 (2d ed.1953). *Compare* the meaning of the word "or" that is defined as "[A] coordinating particle that marks an alternative." Webster's New Collegiate Dictionary 590 (2d ed.1953); *see also* 11 U.S.C. § 102(5) which sets forth a "rule of construction" for the term "or" that is statutorily defined under the Code as follows: "In this title— 'or' is not exclusive." The legislative history underlying section 102(5) provides that: "Paragraph (5) specifies that 'or' is not exclusive. Thus, if a party 'may do (a) or (b),' then the party may do either or both. The party is not limited to a mutually exclusive choice between two alternatives." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 315–16 (1977), 1978 *U.S.C.C.A.N.* 5963, 6272, S.Rep. No. 95–989, 95th Cong., 2d Sess. 28 (1978), 1978 *U.S.C.C.A.N.* 5787, 5814; 1978 WL 8531 (Leg.Hist.) at 60. According to the plain language of section 523(a)(6), a prepetition judgment or claim

against the debtor must be for an injury to the person or property of another that is *both* "willful and malicious," and the absence of either element creates a dischargeable debt. *Markowitz*, 190 F.3d at 463 (6th Cir.1999).

The drafting of section 523(a)(6) of the Code is somewhat analogous to the comparison of intentional torts versus negligent or reckless torts. *See Kawaauhau v. Geiger (In re Geiger)*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). Generally speaking, intentional torts require that an actor (*i.e.,* the debtor) intends the natural consequences of an act, rather than simply the act itself. *Id.* A debtor does not commit a "willful and malicious injury" under section 523(a)(6) of the Code unless he/she desires to cause the consequences of his/her act or believes that the consequences are substantially certain to result. *Markowitz v. Campbell*, 190 F.3d at 464 (6th Cir.1999)(applying the rationale set forth in *Geiger* ).

▆▆▆ Since the word "willful" in section 523(a)(6) of the Code modifies the word "injury," this indicates that the granting of a nondischargeability judgment requires a deliberate and intentional act or injury by the debtor to the person or property of another entity—not just a deliberate and intentional act which leads to injury. *See Kawaauhau v. Geiger, supra.* The underlying and relevant legislative history and committee notes provide that the word "willful" means "deliberate and intentional." *See* section 523(a)(6) of the Code; H.R.Rep. No. 95–595, 9th Cong. First Session 363 (1977), 1978 *U.S.C.C.A.N.* 5963, 6319; S.Rep. No. 989, 9th Cong.2d Sess. 77–79 (1978), 1978 *U.S.C.C.A.N.* 5787,

5862–5865. The analysis regarding the "willfulness" element in section 523(a)(6) is not in question here. The ultimate outcome of this proceeding, therefore, will depend instead and predominantly on whether Mr. Trantham's conduct, based on the prepetition District Court record, was "malicious" as contemplated under section 523(a)(6) of the Code.

▆▆▆ Issue preclusion (*i.e.,* collateral estoppel) [7] applies to nondischargeability proceedings under section 523(a) of the Code. *Grogan v. Garner*, 498 U.S. 279, 285 nn. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Issue preclusion traditionally prevents a party from relitigating issues actually and necessarily litigated in a prior case. *In re Moffitt*, 252 B.R. 916, 920 (6th Cir. BAP 2000). The application of issue preclusion in subsequent cases or proceedings promotes the efficient use of judicial resources and forces parties to recognize actions brought against them. *Id.* The Sixth Circuit has held that the preclusive effect of a prior federal court judgment requires application of the federal rule regarding issue preclusion. *Id.* at 921 nn. 3 & 4 (citing cases from the 1st, 2nd, 4th, 5th, 7th, and 11th Circuit Courts of Appeals that agree with the majority of circuit courts that the federal law of issue preclusion applies to subsequent federal causes of actions, especially where courts struggle to decide whether to apply the federal law of issue preclusion or state law).

▆▆▆ The Sixth Circuit has articulated a federal rule regarding issue preclusion requiring "that the precise issue must have been raised in the prior proceeding, that the issue was actually litigated, and that

---

7. The Sixth Circuit seemingly has stated a preference for the use of the phrase "issue preclusion" instead "collateral estoppel." *See In re Moffitt,* 252 B.R. 916, 920 nn. 2 (6th Cir. BAP 2000)(citing *Heyliger v. State Univ.*

*and Comm. College Sys. of Tennessee,* 126 F.3d 849, 852 (6th Cir.1997)); *Barnes v. McDowell,* 848 F.2d 725, 728 nn. 5 (6th Cir. 1988).

the determination was necessary to the outcome." *Spilman v. Harley,* 656 F.2d 224, 228 (6th Cir.1981); *Moffitt,* 252 B.R. at 921; *In re Calvert,* 105 F.3d 315, 317 n. 2 (6th Cir.1997); *See also* 3 NORTON BANKRUPTCY LAW AND PRACTICE 2D, § 47:72 (2002)("requiring parties to establish that (1) the issue to be decided by the bankruptcy court is identical to that involved in the prior litigation, (2) the issue was actually litigated in the prior litigation, (3) the issue was determined by a valid and final judgment, (4) the determination of the issue in the prior litigation was essential to the judgment in the earlier action, and (5) the standard of proof in the prior litigation was at least as high as the standard in the present litigation.").

In this case, the jury, as the trier of fact in the prepetition District Court action, decided the issue of willfulness when it rendered its jury verdict. *See* jury verdict entered on September 28, 2001; plaintiff's Exhibit C. Thereafter, Judge Wiseman affirmed the findings of the jury within the context of the post-trial motion submitted by Mr. Trantham that contested the issue of willfulness. *See* the Memorandum dated March 5, 2002, at page 3; plaintiff's Exhibit D. As noted, Mr. Trantham essentially concedes in this proceeding that the element of wilfulness under section 523(a)(6) has been met by Monsanto. *See* Mr. Trantham's Response to the plaintiff's motion for summary judgment filed on October 18, 2002, at page 16. The issue of willfulness is clearly established in the two post-trial memoranda. *See* the Memoranda dated March 5, 2002, at page 4; plaintiff's Exhibit D.

Judge Wiseman's memorandum addressing the enhancement of damages leaves no doubt that Mr. Trantham "willfully" injured Monsanto and its property when Mr. Trantham intentionally and deliberately planted seeds without paying the prescribed licensing fees. *See* the Order and Memorandum dated May 14, 2002 at page 5; plaintiff's Exhibit E (stating that the infringement issue was decided at summary judgment and "the issue of Trantham's willfulness was not a close one in this case" when he analyzed the "closeness" factor in addressing the post-trial motion on the issue of damages). Judge Wiseman also utilized the word "willful" multiple times in his well drafted memorandum when he trebled the damages against Mr. Trantham applying the factors used in 35 U.S.C. § 284 concluding that the Mr. Trantham willfully infringed upon Mansanto's legally protected patents. *See* the Order and Memorandum dated May 14, 2002 at page 5; plaintiff's Exhibit E.

Thus, the issue of Mr. Trantham's willfulness was adjudicated in the prepetition District Court patent infringement litigation because the precise issue of willfulness was actually raised, litigated, and determined because adjudication of the willfulness issue was necessary to the outcome of the patent infringement action. The malicious element, under the facts and circumstances of the instant proceeding, is much less certain and requires further consideration and strict analysis. As noted, Monsanto, as the plaintiff-creditor herein, bears the ultimate burden to show by a preponderance of the evidence which parts of the prepetition District Court record are based on a malicious injury; and Monsanto also bears the ultimate burden of proof under section 523(a)(6) of the Code by a preponderance of the evidence. *See* 3 COLLIER ON BANKRUPTCY ¶ 523–12[3] at 523–94 (15th ed. Rev.2002).

Initial confusion may result when one considers the section 523(a)(6) statutory meanings of the two words—"willful" *and* "malicious"—to be identical or interchangeable. *See* David G. Epstien, Steve H. Nickles, and James J. White, BANK-

RUPTCY, § 7.30 at 381 (1992). The application of the element of malice can be a perplexing exercise (especially in commercial settings such as this one involving an individual farmer who has impermissibly infringed upon statutorily protected patents). *See, e.g., In re Cooney,* 18 B.R. 1011, 1013 (Bankr.W.D.Ky.1982); *In re Boren,* 47 B.R. 293, 295 (Bankr.W.D.Ky. 1985). The application of the malicious standard indeed is sometimes difficult for courts applying *Geiger*—a negligent medical malpractice case—to other factual scenarios including, for example, commercial transactions (such as this one), especially considering the different standards utilized by various courts addressing section 523(a)(6) in the dischargeability context.[8] In this court's opinion, the meanings of the two words (*i.e.,* "willful" and "malicious") were intended by the Congress to be treated differently and possess entirely separate and distinct legal significance under section 523(a)(6).

Although the meaning of the word "willful" was addressed in the relevant legislative history underlying section 523(a)(6), some confusion may be attributed to the Congress' failure also to address the meaning of the word "malicious" as used in section 523(a)(6). Mary J. Loeffler, *One Standard Please: A Look at the Quantums of Proof Required in Federal Bankruptcy Code Section 523(a)(6) Nondischargeability Proceedings,* 6 COOLEY L. REV. 67, 70 (1989); *see also* Karen N. Fischer, *The Exception to Discharge for Willful and Malicious Injury: The Proper Standard for Malice,* 7 BANKR. DEV. J. 245 (1990). In some instances, even malicious conduct may be excused under certain circumstances—such as, for example, a debtor's attempt to save a struggling business by converting legally perfected encumbered assets. George M. Ahrend and Randall T. Thomsen, *Tort Claims and Judgments as Debts For "Willful and Malicious Injury" Nondischargeable Under Section 523(a)(6) of the Bankruptcy Code,* 100 COMM. L.J. 498, 515 (1995).

■ In making maliciousness determinations within the section 523(a)(6) context under the Code, the court must apply a strict analysis of the debtor's subjective intent on a case-by-case basis, particularly when considering the Sixth Circuit holding in *Markowitz, supra.* As stated earlier, *Markowitz* requires the lower courts in the Sixth Circuit to determine whether the debtor subjectively desired to intend the harm or had knowledge that harm is substantially certain to occur or result from the debtor's actions. *Markowitz,* 190 F.3d at 464.

■ Mr. Trantham asserts that his subjective intent was not to specifically harm Monsato. This court agrees with Mr. Trantham and Judge Wiseman and, therefore, expressly finds that Mr. Trantham, based on the relevant prepetition District Court record, failed to possess a malicious intent to actually harm or injure Monsato or its property. In essence, Mr. Trantham asserts that his motivational

---

**8.** *See In re Thiara,* 285 B.R. 420, 430 (9th Cir. BAP 2002); *see also In re Horldt,* 86 B.R. 823, 824–25 (Bankr.E.D.Pa.1988); *In re Pineau,* 149 B.R. 239, 242 (D.Me.1993) (listing four standards emphasizing the subtle differences in the approaches as to what the meaning and application of a malicious injury in the section 523(a)(6) context are as follows: (1) the creditor must prove that the debtor acted with the specific intent to injure the creditor; (2) that the creditor need only prove that the debtor acted without just cause or excuse; (3) that the debtor's conduct target the creditor, at least in the sense that the conduct was certain or almost certain to cause financial harm; and (4) the "totality of the circumstances" approach, which adopts the position that an injury is malicious if the debtor fails to act in subjective good faith.).

conduct and intent involving Monsanto were the result of the efforts of a financially distressed farmer seeking to enhance his farming operation via a more efficient planting and harvest of vital crops rather than to maliciously injure Monsanto and its patents.

Considering a totality of the particular facts and circumstances and applicable legal authority, Monsanto has failed to carry the required and necessary burden of proof under section 523(a)(6) by a preponderance of the evidence to warrant its sought for exception to Mr. Trantham's general discharge. The evidence here is insufficient to establish a "malicious" injury of the kind required by the Congress under section 523(a)(6). No doubt, Mr. Trantham's prepetition willful acts and conduct led to Monsanto's economic injury; however, the acts and conduct that occasioned Monsanto's patent infringement judgment against Mr. Trantham, while generally agreed by all to be willful and unacceptable behavior, failed to constitute both a "willful and malicious injury" as intended by the Congress and interpreted by the Supreme Court and the Sixth Circuit within the context of section 523(a)(6).

It is important to note that the statutory treble damage provisions under 35 U.S.C. § 284 that were utilized and applied in the prepetition District Court action do not mirror the statutory language used in section 523(a)(6) of the Code and, accordingly, are not, *ipso facto,* binding in a subsequent bankruptcy dischargeability action regarding the malicious issue. As noted earlier, Judge Wiseman specifically found that no evidence was presented in the prepetition District Court action indicating that Mr. Trantham "was motivated by an intent to harm Monsanto." *See* Memorandum entered on May 14, 2002, at page 5; plain-

tiff's Exhibit E (stating that "[T]here is no evidence that Trantham was motivated by an intent to harm Monsanto.").

Indeed, Mr. Trantham's prepetition behavior constituted reckless, careless, negligent, and even aggravated disregard for Monsanto and its patent rights. Mr. Trantham was appropriately held accountable in the prepetition District Court civil action by the rendering of a large monetary judgment and also injunctive relief against him to prohibit future infringements upon Monsanto's patents; however, based on this record and especially Judge Wiseman's prior findings referred to above, Mr. Trantham's acts, conduct, and behavior were not "malicious" as contemplated in section 523(a)(6) of the Code. Although this court disapproves of Mr. Trantham's reckless disregard and the like toward Monsanto and its patents, nonetheless, Monsanto's prepetition monetary judgment against Mr. Trantham is subject to discharge in this chapter 7 bankruptcy case based on the District Court record. It does not go completely unnoticed that Monsanto's original and amended complaint filed in the District Court did not specifically plead or otherwise allege malicious conduct on the part of Mr. Trantham.

Mr. Trantham's willful disregard/neglect to pay Monsanto's required licensing fees for use of patented seeds purchased in a prior planting season under these circumstances fails to constitute the type of malicious conduct as defined section 523(a)(6) of the Code, especially considering the subjective standard adopted by the Sixth Circuit in *Markowitz.* Mr. Trantham did not intend to injure Monsanto by failing to pay such licensing fees; his intentions assertedly were to produce an efficient and profitable crop and save his farm.[9]

---

**9.** Actually, Mr. Trantham seemingly suggests that his prepetition acts and conduct that

gave rise to the patent infringement judgment were more akin to a traditional, willful breach

Accordingly, a prepetition claim or judgment against a debtor for a willful patent infringement does not, *ipso facto*, also translate into or otherwise routinely constitute a *per se* "willful and malicious injury" within the context of the section 523(a)(6) exception ·to discharge. The mere fact of the intentional nature of the patent infringement, standing alone, is insufficient to also automatically satisfy, on a *per se* basis, the "willful and malicious injury" requirement under section 523(a)(6). Each patent infringement action within the context of section 523(a)(6) litigation must be viewed, applied, and decided on a case-by-case basis in light of the totality of the particular facts and circumstances and applicable law. Parenthetically, it is noted that the statutory exception to discharge under section 523(a)(6) does not even apply in chapter 13 cases under the Code involving individual debtors. Such acts are subject to a broader discharge in chapter 13 cases without a trial on the merits. *See* 11 U.S.C. § 1328(a); *compare* 11 U.S.C. § 1325(a)(3).

### *Conclusions*

■ Based on all the foregoing, the court finds and concludes that Mr. Trantham engaged in willful, reckless, negligent, and aggravated prepetition behavior in disregard of the legally protected property rights of Monsanto under the federal patent laws. Mr. Trantham's willful conduct resulted in an injury to Monsanto and its property thereby causing and creating economic damages under the applicable provisions of titles 28 and 35 of the United States Code. The malice element

of section 523(a)(6) of the Code, however, requires a subjective intent to cause the harm. Injuries caused through negligence, carelessness, and/or recklessness do not also automatically satisfy the required malice standard of proof under section 523(a)(6). (Perhaps it is important to note that no one has suggested that Mr. Trantham has continued to infringe upon Monsanto's patent after the entry of the federal injunction in the prepetition District Court action,[10] and that neither the United States trustee, the chapter 7 trustee, Monsanto, nor any other party in interest has suggested that Mr. Trantham's chapter 7 case constituted an abuse of the bankruptcy system or was filed in bad faith.) [11]

In summary, Monsanto has failed to prove by a preponderance of the evidence that Mr. Trantham's unacceptable, prepetition behavior arising out of his farming operation additionally constituted the type of *malicious* conduct intended by the Congress to be excepted from discharge in legislating this particular exception to discharge under section 523(a)(6). As emphasized and noted above, the statutory treble damage provisions under 35 U.S.C. § 284 that were invoked and applied in the prepetition District Court action do not mirror the language used in section 523(a)(6) of the Code. This court very strongly emphasizes here Judge Wiseman's findings in the prepetition District Court action that Mr. Trantham had committed "neither fraud, abuse of the judicial process or *any other gross injustice.*" (emphasis added). *See* Order entered May 14, 2002 at page 8;

of (implied) contract or a breach of a statutory property right rather than a "willful and malicious injury" to the person or property of Monsanto.

**10.** *Compare In re Klayminc,* 37 B.R. 728 (Bankr.N.D.Ill.1984)(the debtors' continued infringement of plaintiff's trademark after the

entry of a federal injunction constituted "willful and malicious" injury which rendered the plaintiff's claim nondischargeable).

**11.** See 11 U.S.C. § 707(a); *In re Zick,* 931 F.2d 1124 (6th Cir.1991) (holding that lack of good faith is a valid basis to dismiss a chapter 7 case "for cause" under section 707(a)).

plaintiff's Exhibit E. This court also very strongly emphasizes Judge Wiseman additionally found that no evidence was presented in the district court action indicating that Mr. Trantham "was motivated by an intent to harm Monsanto." *See* Memorandum entered on May 14, 2002, at page 5; plaintiff's Exhibit E (stating that "[T]here is no evidence that Trantham was motivated by an intent to harm Monsanto."). These particular findings of Judge Wiseman played a significant role in the ultimate conclusion reached by this court regarding the malicious issue under section 523(a)(6) of the Code. Evidence of Mr. Trantham's willful patent infringement in violation of Monsanto's rights with knowledge of those rights under the facts and circumstances existing here is insufficient to concomitantly establish a "malicious" injury of the kind contemplated by the section 523(a)(6) exception to discharge.

Consequently, the prepetition patent infringement judgment evidenced by the District Court litigation is not the product of a "willful *and* malicious injury" (emphasis added) inflicted by Mr. Trantham to Monsanto or its property within the context of section 523(a)(6) litigation. Monsanto's prepetition final monetary judgment against Mr. Trantham (including the attorney fees, expert witness fees, and post-judgment interest) does not qualify in this chapter 7 case as an exception to discharge under section 523(a)(6) of the Code. The prepetition judgment in the aggregate amount of $592,677.89 for monetary damages owed by Mr. Trantham to

Monsanto is hereby discharged in bankruptcy as Monsanto has failed to carry the required burden of proof. As stated earlier, exceptions to a debtor's discharge are strictly construed against the plaintiff-creditor and liberally in favor of the defendant–debtor. *See, for example, Gleason v. Thaw,* 236 U.S. at 562, 35 S.Ct. 287, 59 L.Ed. 717 (1915); *In re Ward,* 857 F.2d 1082, 1083 (6th Cir.1988); *see also* 3 COLLIER ON BANKRUPTCY ¶ 523–05 at 523–20 (15th ed. Rev.2002)(citing *Equitable Bank v. Miller,* 39 F.3d 301 (11th Cir.1994)); *In re Tully,* 818 F.2d 106 (1st Cir.1987); *Boyle v. Abilene Lumber, Inc.,* 819 F.2d 583 (5th Cir.1987); *compare* section 523(a)(2)(C)(not applicable law).

In the final analysis, it additionally and conclusionally appears to the court, after sifting through the totality of the particular facts and circumstances and applicable law existing here, that statutory tension may exist between the competing congressional policies of the federal patent and bankruptcy laws.[12] From the bankruptcy policy perspective, it is observed that the Supreme Court stated in *Bank of Marin v. England,* 385 U.S. 99, 103, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966), that the bankruptcy laws cannot be read "with the ease of a computer." Although it may be a judicially arduous task and perplexing exercise to successfully apply and thereby harmonize these competing federal policies involving issues under section 523(a)(6) of the Code to nonbankruptcy commercial settings concerning, for example, patent infringement litigation involving individual farmers who

12. By analogy, it is noted that in *NLRB v. Bildisco & Bildisco (In re Bildisco & Bildisco),* 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), and section 1113 of the Code, the Supreme Court and Congress respectively addressed concerns and issues regarding the countervailing congressional tension existing between the competing policies of the federal labor and bankruptcy laws arising out of settings involving collective bargaining agreements. After the Supreme Court decided *In re Bildisco & Bildisco,* the Congress decided to legislate on the subject of the standards to be statutorily set with regard to assurances that debtors and creditors would be treated fairly and equitably when addressing such competing policies in collective bargaining agreement settings. *See* 130 Cong. Rec. H.7496 (daily ed. June 29, 1984); remarks of Rep. Langren, Rep. Hughes, and Rep. Morrison; section 1113 of the Code legislatively reversing, in part, *In re Bildisco & Bildisco.*

are experiencing financial distress, nonetheless, the courts, until a more specific congressional roadmap is provided, will continue to address these difficult matters on a case-by-case basis with the outcome being very fact intensive. Accordingly,

**IT IS ORDERED AND NOTICE IS HEREBY GIVEN:** That the instant motion for summary judgment filed by the plaintiff, Monsanto, against the defendant, the above-named debtor, William Farris Trantham, pursuant to FED. R. BANKR. P. 7056, results in Monsanto's prepetition judgment for patent infringement including attorneys' fees, expert witness fees, and post-judgment interest in the aggregate amount of $592,677.89, is judicially declared to be dischargeable; however, the injunctive relief Judge Wiseman referred to in the district court's prepetition Order dated May 14, 2002, prohibiting future patent infringements by Mr. Trantham against Monsanto is hereby expressly declared to be nondischargeable.[13]

---

**13.** *See In re Klayminc,* 37 B.R. 728 (Bankr. N.D.Fla.1984); *see also* 11 U.S.C. § 101(5)(B) that defines "claim" to mean—

right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured;